**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| BRITTNEY WARNER, | ) | CASE NO. 1:24-CV-01386-CEH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | CARMEN E. HENDERSON |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY | ) | MEMORANDUM OPINION |
| ADMINISTRATION, | ) | AND ORDER |
| | ) | |
| Defendant, | ) | |
| | ) | |

## I. Introduction

Plaintiff, Brittney Warner ("Warner" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Supplemental Security Income ("SSI"). This matter is before me by consent of the parties under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 7). For the reasons set forth below, the Court REMANDS this case for further proceedings pursuant to sentence six of 42 U.S.C. § 405(g).

## II. Procedural History

On March 29, 2022,[1] Claimant filed an application for SSI, alleging a disability onset date of January 1, 2021 and claiming she was disabled due to epilepsy, post-traumatic stress disorder (PTSD), mood disorder, depression, anxiety, arthritis, and bursitis in the hips. (ECF No. 8, PageID # 321, 346). The application was denied initially and upon reconsideration, and Warner requested a hearing before an administrative law judge ("ALJ").  (ECF No. 8, PageID #:

---

[1]     There is some confusion in the record as to Claimant's application date—with the ALJ's decision (ECF No. 8, PageID #: 41) listing the date as December 14, 2021 and other transcript documents and Claimant's brief listing the date as March 29, 2022. (ECF No. 8, PageID #: 290; ECF No. 9 at 1).

1

210, 218, 223).  On August 1, 2023, an ALJ held a hearing, during which Warner, represented by counsel, and an impartial vocational expert testified.  (ECF No. 8, PageID #: 59).  On September 20, 2023, the ALJ issued a written decision finding Claimant was not disabled.  (ECF No. 8, PageID #: 51).  The ALJ's decision became final on June 24, 2024, when the Appeals Council declined further review.  (ECF No. 8, PageID #: 24).

On August 13, 2024, Claimant filed her Complaint to challenge the Commissioner's final decision.  (ECF No. 1).  The parties have completed briefing in this case. (ECF Nos. 9, 12).  Claimant asserts the following assignments of error:

(1) "Evidence submitted subsequent to the hearing is new and material evidence";

(2) "The ALJ erred in evaluating Plaintiff's pain by cherry-picking the evidence and failing to address the entire record"; and

(3) "The ALJ erred in making a residual functional capacity finding that did not fully account for limitations arising from Plaintiff's seizure and hip impairments, and thus lacked the required logical bridge between the evidence and the RFC conclusions."

(ECF No. 9 at 13, 15, 19).

## III. Background

### A.  Relevant Hearing Testimony

During her hearing, Warner testified that, in regard to her epilepsy, she experiences stress-induced partial seizures a few times a week, sometimes multiple per day, and she never knows when she will have them. (ECF No. 8, PageID #: 68). She explained that during her seizures she stares off and "smack[s]" her mouth and gets very dizzy. (ECF No. 8, PageID #: 68). She takes medication for these seizures but testified that the medications cause horrible side effects, making her feel very fatigued, causing blurred vision and unsteadiness, and affecting her

memory and ability to pay attention. (ECF No. 8, PageID #: 68).

Warner additionally testified that she experiences PTSD, depression, anxiety, and panic attacks that cause breathing difficulties. (ECF No. 8, PageID #: 69). She explained that she regularly receives mental health treatment, including speaking with a counselor once per week, seeing a psychiatrist, and taking prescribed mental health medication, which she finds helpful for her partial seizures, too. (ECF No. 8, PageID #: 74).

Regarding her hip, Plaintiff testified that she experienced sharp pain from her hip to knee frequently, that she felt pain in her hip "all day," and that it would wake her from her sleep (ECF No. 8, PageID #: 69–70). She explained that the pain made walking long distances or even putting socks and shoes on her right foot difficult. (ECF No. 8, PageID #: 69). She further testified that she was unable to sit or stand for long periods of time and needed to alternate back and forth between sitting and standing. (ECF No. 8, PageID #: 69). She estimated that she could sit or stand for approximately thirty minutes at a time and could walk for approximately fifteen minutes consecutively. (ECF No. 8, PageID #: 71–72). Warner additionally reported that she had degenerative disc disease and experienced pain in her back. (ECF No. 8, PageID #: 70). She testified that she was going to physical therapy three times per week for the hip and back pain and additionally received cortisone injections and trigger point injections, which helped little, if at all. (ECF No. 8, PageID #: 70). She also explained that her insurance would not cover an MRI until she completed six consecutive months of physical therapy. (ECF No. 8, PageID #: 71).

Warner additionally stated that she struggled to lift her dog, who weighed fifty-five pounds, and struggled to reach with her right arm, both due to her right hip pain. (ECF No. 8, PageID #: 72) She explained that her boyfriend, with whom she lived, did most of the household chores. (ECF No. 8, PageID #: 73).

3

**B.  Relevant Medical Evidence**

The ALJ summarized Claimant's health records and symptoms:

> The claimant has been assessed with epilepsy with complex partial seizures, intractable, without status epilepticus. (Exhibit 4F, pg. 17). Medical records dated February 23, 2022, indicate that the claimant was instructed not to bathe or swim unsupervised, not to drive, to avoid heights, not to use sharp moving objects, and not to use heavy machinery. (Exhibit 6F, pg. 32). According to January 21, 2022 medical records, the claimant reported she has been experiencing an increase in partial seizures over the past year and a half. She stated that she used to have seizures every three to four months but now was experiencing seizure episodes once per month in clusters of at least five to six within a couple of hours of each other. (Exhibit 5F, pgs. 6). EEG testing in February and June 2022 was consistent with the diagnosis of focal epilepsy and psychogenic non-epileptic events. The claimant reported that her grand mal seizures were under control but she continued to experience partial seizures. (Exhibit 20F, pgs. 13, 15). On May 20, 2023, the claimant reported that her seizures were not as bad as they used to be. (Exhibit 23F, pg. 10).
>
> The claimant has reported hip pain related to an injury in 2018. X-rays have shown postsurgical changes in the pelvis and only minimal narrowing involving the weightbearing portion of the right hip joint and mild degenerative changes at both hip joints. (Exhibits 2F, pgs. 11, 17; 10F, pg. 13). She has reported back pain. X-rays revealed moderate intervertebral disc space loss, end plate sclerosis, and facet hypertrophy of the lower lumbar spine from L4-S1. (Exhibit 10F, pg. 11). According to August 19, 2022 medical records, the claimant reported chronic right hip pain. It was noted she has undergone physical therapy, Cortisone shots, and other shots, without relief. The claimant reported she was on Mobic with little relief. On examination, the claimant was not in acute distress and she had limited range of motion of the right hip. (Exhibit 16F, pgs. 12, 15).
>
> Mentally, the claimant has been assessed with generalized anxiety disorder, posttraumatic stress disorder, and recurrent major depression. (Exhibit (Exhibit 4F, pgs. 11-13). According to April 13, 2022 medical records, the claimant's mental health medications were Abilify and Clonazepam. A mental status examination showed that the claimant was oriented to person, place, time and situation. She was well groomed and appropriately dressed. Her mood was described as depressed. She had intact memory but

scattered concentration. Her speech was clear and distinct. She denied suicidal and homicidal ideation. (Exhibit 7F, pgs. 5-6). The claimant was admitted for treatment from June 20, 2022 to June 22, 2022 after misusing Clonazepam and taking more than she was prescribed. (Exhibit 11F, pg. 21). On July 21, 2022, the claimant informed her mental health provider that she was "hanging in there." She denied suicidal and homicidal ideation and paranoia but reported nightmares. (Exhibit 13F, pgs. 11). According to February 20, 2023 mental health treatment records, the claimant reported that she had been experiencing an increase in anxiety. She had a normal mental status examination except for an anxious mood and affect. (Exhibit 18F, pgs. 8, 11). On May 30, 2023, the claimant reported that she had ended a toxic relationship with her boyfriend. It was noted that the claimant met a friend through AA that was supporting her and she was living with him. With the exception of a depressed mood and anxious affect, the claimant's mental status examination was normal. (Exhibit 23F, pgs. 10, 13).

(ECF No. 8, PageID #: 47–48).

## IV.  The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except with the following restrictions: Frequently climb ramps or stairs; never climb ladders, ropes, or scaffolds; occasionally stoop, kneel, or crouch; frequently crawl; frequently handle and finger with the left hand; must avoid all exposure to hazards such as unprotected heights, moving machinery, and commercial driving; can carry out simple and some complex tasks in a routine work setting with few, minor changes; and can respond appropriately to supervisors, coworkers, and work situations if the tasks performed are goal-oriented, but not at a production rate pace, the work does not require more than superficial interaction, meaning that it does not require negotiating with, instructing, persuading, or directing the work of others, and the occupation does not require tandem work or interaction with the public.

> 9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

5

10. The claimant has not been under a disability, as defined in the Social Security Act, since December 14, 2021, the date the application was filed (20 CFR 416.920(g)).

(ECF No. 8, PageID #: 46, 50, 51).

## V. Law & Analysis

### A.  Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B.  Discussion

Claimant raises three issues on appeal, arguing that 1. evidence she submitted subsequent to the hearing is new and material evidence and the matter should be remanded under sentence six of 42 U.S.C. § 405(g); 2. "[t]he ALJ erred in evaluating Plaintiff's pain by cherry-picking the

6

evidence and failing to address the entire record"; and 3. "[t]he ALJ erred in making a[n RFC] finding that did not fully account for limitations arising from Plaintiff's seizure and hip impairments, and thus lacked the required logical bridge between the evidence and the RFC conclusions." (ECF No. 8, PageID #: 13, 15, 19).

Because the Court agrees that this matter should be remanded for further proceedings under sentence six, it does not consider Warner's other two issues.

### 1.  Sentence Six Framework

When determining whether the ALJ's decision is supported by substantial evidence, a reviewing Court is constrained to reviewing the record that was before the ALJ. *Wyatt v. Sec'y of Health & Hum. Servs.*, 974 F.2d 680, 685 (6th Cir. 1992); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 478 (6th Cir. 2003). However, under sentence six of 42 U.S.C. § 405(g), the reviewing court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g).

> The Sixth Circuit has interpreted this statute as creating the following requirements for a remand to consider new evidence: that the evidence be "new"- that is, "not in existence or available to the claimant at the time of the administrative proceeding"; that the evidence be "material," which requires showing a "reasonable probability" that the Commissioner would have reached a different disposition of the claim if presented with the new evidence; and that "good cause" exists for not producing the evidence in a prior proceeding, which requires showing "a reasonable justification for the failure to acquire and present the evidence of inclusion in the hearing before the ALJ."

*Phillips v. Comm'r of Soc. Sec.*, No. 5:19-CV-01261, 2020 WL 1159376, at *10 (N.D. Ohio Mar. 10, 2020) (quoting *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (citations and

internal quotations omitted)). The party seeking the remand bears the burden of showing that a sentence six remand is appropriate. *Oliver v. Sec'y of Health & Hum. Servs.*, 804 F.2d 964, 966 (6th Cir. 1986). However, a court may remand a case under sentence six either upon motion or *sua sponte*. *Gifford v. Comm'r Soc. Sec.*, No. 5:20-CV-559, 2021 WL 3737912, at *4 (N.D. Ohio Aug. 24, 2021) (citing *Street v. Comm'r of Soc. Sec.*, 390 F. Supp. 2d 630, 640 (E.D. Mich. 2005) ("[U]nder the plain language of § 405(g), the Court can properly grant a sentence six remand *sua sponte*, based on its finding that the post-decision material is both new and material.") (internal citation omitted)).

If a district court remands a claim under sentence six, the court "does not affirm, reverse, or modify the Commissioner's decision," rather, it remands for further administrative proceedings without ruling on the merits." *Prater v. Comm'r of Soc. Sec.*, 235 F. Supp. 3d 876, 880 (N.D. Ohio 2017) (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 98(1991)). And jurisdiction in the event of such a remand would remain with the district court, *i.e.*, a sentence-six remand "is not a final judgment that can be appealed." *Id.*

### 2. Claimant had Good Cause for Failing to Present New, Material Evidence in Earlier Proceedings.

Following the ALJ's decision, Claimant presented additional evidence to be considered by the Appeals Council. That evidence consisted of records from University Hospitals Physician Services dated August 21, 2023 to September 6, 2023; records from the Cleveland Clinic dated June 28, 2023 to July 18, 2023; records from University Hospitals Physician Services dated October 9, 2023 to February 16, 2024; records from the Cleveland Clinic dated October 16, 2023 to February 7, 2023; and a letter from Andreas Alexopoulos, M.D., dated June 17, 2024. (ECF No. 8, PageID #: 25). However, in her brief, Claimant appears to argue that only evidence related to her hip pain—including clinical notes from her August 21, 2023 appointment with Dr.

Ohlinger, MRI results dated September 6, 2023, clinical notes from her October 9, 2023 appointment with Dr. Ohlinger, clinical notes from her October 17, 2023 appointment with Dr. Sabo, and clinical notes from her December 12, 2023 post-operative appointment with Dr. Sabo—should be considered by the ALJ on remand as new and material evidence. (ECF No. 9 at 14). Warner asserts that this evidence came into existence shortly after the ALJ's hearing but relates to her severe impairment that was before the ALJ at the time of the hearing. (ECF No. 9 at 13). She further asserts that this evidence is relevant to the time period before the ALJ because previous record evidence showed she reported right hip pain and included objective findings of tenderness, limited range of motion, positive straight leg raise, and pain to palpation, and the new evidence—specifically the MRI findings—were consistent with the source and severity of her pain that was before the ALJ. (ECF No. 9 at 14). Warner argues that if this evidence was before the ALJ "then it is quite possible, and likely, that he would have made a different RFC determination and found more significant limitations related to [her] capacity to stand, walk, sit, and sustain an eight-hour work day." (ECF No. 9 at 14–15).

The Commissioner argues that "a sentence six remand is not warranted for consideration of the evidence submitted to the Appeals Council as Plaintiff has not met her burden of showing that this evidence is new *and* material and that she had good cause for not submitting the evidence to the ALJ." (ECF No. 12 at 16). Specifically, the Commissioner argues that evidence dated before the ALJ's decision is not new, that all additional evidence, dated both before and after the ALJ's decision, is immaterial—claiming specifically that the post-decision evidence is not relevant to the time period at issue—and that Plaintiff failed to establish good cause for her failure to submit the additional evidence to the ALJ earlier. (ECF No. 12 at 13–16).

The Court disagrees with the Commissioner's sentence six remand analysis and, as discussed in further depth below, finds support in the record that at least some evidence presented to the Appeals Council was new and material and that good cause exists for Warner's failure to present such evidence to the ALJ during the prior administrative proceeding.

i. **The Evidence That Warner Asks be Considered by the ALJ Pursuant to Sentence Six Remand Is New Evidence.**

Evidence is considered new, for purposes of a sentence six remand, "only if it was 'not in existence or available to the claimant at the time of the administrative proceeding.'" *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)). Courts within this circuit seem to disagree on what "administrative proceeding" means in this context. Some assert that to be new, evidence must not have been in existence or available to the claimant at the time of the ALJ's decision, *see, e.g.*, *Beaty v. Comm'r of Soc. Sec.*, No. 1:10-CV-894, 2012 WL 3779700, at *7 (W.D. Mich. Aug. 3, 2012), *report and recommendation adopted*, No. 1:10-CV-894, 2012 WL 3779912 (W.D. Mich. Aug. 31, 2012)) (finding that the records the claimant presented to the Appeals Council were not "new" for sentence six remand purposes because they were created before the ALJ issued his decision); *Long v. Comm'r of Soc. Sec.*, No. 1:20-CV-1490, 2021 WL 2530216, at *3 (N.D. Ohio June 21, 2021) (finding the claimant could not show that a record created before the ALJ hearing was new), while others assert that evidence is new for sentence six remand purposes if it was not in existence or available to the claimant at the time of the administrative hearing in front of the ALJ. *See, e.g.*, *Belcher v. Comm'r of Soc. Sec. Admin.*, No. 5:22-CV-01903-JRA, 2023 WL 6963544, at *6 (N.D. Ohio Aug. 24, 2023), *report and recommendation adopted sub nom. Belcher v. Comm'r of Soc. Memorandum of Opinion & Sec.*, No. 5:22CV1903, 2023 WL 6958661 (N.D. Ohio Oct. 20, 2023) (finding records submitted to the Appeals Council were new because they pertained to

10

evidence not in existence at the time of the administrative hearing); *Guthrie v. Comm'r of Soc. Sec.*, No. 18-13784, 2019 WL 8435278 (E.D. Mich. Nov. 26, 2019), report and recommendation adopted, No. 18-13784, 2020 WL 913816, at *5 (E.D. Mich. Feb. 26, 2020) (finding "medical records created after the date of the hearing are 'new' for purposes of the sentence six remand analysis").  In an abundance of caution for Claimant's interests, this Court will consider evidence "new" under 42 U.S.C. § 405(g) if the evidence did not exist or was unavailable to Claimant at the time of the ALJ's hearing, here, August 1, 2023.

Thus, because each of the records that Plaintiff asserts should be reviewed by the ALJ on sentence six remand are dated after August 1, 2023, the date of the ALJ hearing, the evidence at issue is new.

Even if the Court were to find that evidence created after the ALJ's hearing, but before the ALJ's decision, was not new, and thus the August 21, 2023 clinical appointment notes and September 6, 2023 MRI results could not be considered new, several records identified by Plaintiff in her brief would be considered new under 42 U.S.C. § 405(g)—including clinical notes from Warner's October 9, 2023 appointment with Dr. Ohlinger in which Dr. Ohlinger discusses the recent MRI results and what they mean for Warner's diagnoses. (ECF No. 8, PageID #: 178–81). Thus, regardless of whether this Court excludes the MRI results themselves as not new, the MRI results and their impact on Warner's diagnoses would be contained in new evidence, which, if the Court finds materiality and good cause, would be considered by the ALJ on remand.

### ii.  Warner's September 6, 2023 MRI Results, October 9, 2023 and October 17, 2023 Clinical Notes, and December 12, 2023 Clinical Notes Are Material.

For purposes of a sentence six remand, "evidence is 'material' only if there is 'a reasonable probability that the [Commissioner] would have reached a different disposition of the disability

claim if presented with the new evidence.'" *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (quoting *Sizemore v. Sec'y of Health & Hum. Servs.*, 865 F.2d 709, 711 (6th Cir.1988)).

Warner argues that the August 21, 2023 clinical notes show that her "physical examination revealed marked tenderness over the greater trochanter and mild weakness with flexion and extension"; that the September 6, 2023 MRI results "confirmed moderate to severe osteoarthritic changes to the right hip; moderate osteoarthritic changes to the left hip; and multilevel discogenic degenerative changes of the lower lumbar spine"; that the October 9, 2023 follow-up clinical notes showed "findings of moderate pain and limited range of motion, with a diagnosis of right hip arthritis versus avascular necrosis and a recommendation that right hip arthroplasty be discussed with Dr. Sabo, an orthopedic surgeon"; that the October 17, 2023 clinical notes show that Dr. Sabo recommended right total hip arthroplasty after expressing concern for her "worsened pain, difficulty performing activities of daily living, and risk for fall"; and finally that records from December 12, 2023 show that Dr. Sabo replaced her right hip on November 22, 2023. (ECF No. 9 at 14). Warner asserts that though these records relate to evidence that occurred after the ALJ's hearing date, it is still relevant to the time period before the ALJ because the record evidence already demonstrated that she reported right hip pain, and there were objective findings of tenderness, diminished range of motion, positive leg raise, and pain to palpation. (ECF No. 9 at 14). She argues that the MRI findings in particular are "consistent with the source evidence and severity of her pain" and asserts that if the ALJ had this new evidence, he likely would have made a different RFC determination, finding a more significant limitation related to her ability to stand, walk, sit, and sustain an eight-hour workday. (ECF No. 9 at 14–15).

The Commissioner argues that none of Plaintiff's additional evidence presented to the Appeals Council and referenced in her brief is material. First, while the Commissioner appears to concede that the September 6, 2023 MRI results are material, as they "show[] greater degenerative changes of the right hip than shown in prior imaging," they then apparently argue that this materiality is negated by the August 21, 2023 clinical notes, as those showed findings related to the right hip "that were not significantly different than the findings considered by the ALJ" and, thus, are not material.[2] (ECF No. 12 at 14). Next, the Commissioner argues "the October 2023 through June 2024 evidence is dated after the ALJ's September 2023 decision, and thus, is not relevant to the period at issue," explaining that the "[a]dditional evidence is material only if it concerns Plaintiff's condition prior to the ALJ's hearing decision." (ECF No. 12 at 15). Finally, the Commissioner argues that "to the extent a subsequent right total hip arthroplasty that occurred after the ALJ's decision could relate back to Plaintiff's right hip arthropathy, the same materiality analysis applies," and this evidence would not change the ALJ's decision because he already considered Plaintiff's testimony and medical evidence related to her right hip, her ability to perform activities of daily living, and her lack of assistive device. (ECF No. 12 at 15). The Commissioner further argues that the post-surgery records show positive outcomes and include no permanent restrictions from Warner's surgeon. (ECF No. 12 at 16). Thus, the Commissioner argues, this evidence is immaterial because it does not show a reasonable probability of changing the ALJ's decision. (ECF No. 12 at 16).

The Court agrees in part with Warner and in part with the Commissioner. In regard to the August 21, 2023 clinical notes, as Commissioner asserts, this evidence does not appear to differ

---

[2]     The Commissioner does not cite case law showing that if one piece of evidence is not markedly different than the evidence considered earlier by the ALJ, and thus perhaps not material, then this immaterial evidence negates the materiality of other separate records.

significantly from evidence within the record already considered by the ALJ. And Warner does not explain how this evidence meaningfully differs from previous examinations so that it is reasonably probable it will change the ALJ's mind. However, the Court cannot agree with the Commissioner that this somehow diminishes the materiality of the September 6, 2023 MRI results, which as the Commissioner concedes, showed greater degenerative changes of the right hip than was shown in prior imaging available to the ALJ. (ECF No. 12 at 14). Within the section of the ALJ's decision that explains his RFC determination, he specifically notes that X-rays have shown *mild* degenerative changes at both hip joints. (ECF No. 8, PageID #: 47) (emphasis added). The September 6, 2023 MRI, taken *prior to* the ALJ's decision, shows "moderate to severe osteoarthritic changes of the right hip and moderate osteoarthritic changes [of the] left hip." (ECF No. 8, PageID #: 170). This Court finds, as Warner argues, that it is reasonably probable that this evidence could affect the ALJ's RFC determination, particularly the finding that Claimant could perform light work, as defined by 20 CFR 416.967(b), as it may impact her ability to walk, sit, stand, etc. and, thus, that this evidence could change the ALJ's disability determination. Therefore, the September 6, 2023 MRI results are material.

Additionally, as an initial matter regarding the post-ALJ-decision evidence, including the October 9, 2023 clinical notes and the October 17, 2023 clinical notes, the Court finds that these records relate to Warner's condition prior to the ALJ decision, and, thus, are not barred from being considered material to the ALJ's disability determination in this matter, as the Commissioner asserts. There is no indication that Warner's hip condition deteriorated *after* the ALJ issued his decision—in fact the October 9, 2023 clinical notes consider the results of the MRI taken September 6, 2023, *before* the ALJ's determination—and the relatively short time between the ALJ's September 21, 2023 decision, and the Plaintiff's October 9, 2023 and October

17, 2023 examinations suggests that the evidence in those records "is arguably probative of [Warner]'s condition during the relevant time period." *See Gifford v. Comm'r of Soc. Sec.*, No. 5:20-CV-559, 2021 WL 3737912, at \*5 (N.D. Ohio Aug. 24, 2021) (quoting *Pickard v. Comm'r of Soc. Sec.*, 224 F. Supp. 2d 1161, 1171 (W.D. Tenn. 2002)).

The Court therefore finds that the notes from Claimant's October 9, 2023 follow up visit with Dr. Ohlinger and October 17, 2023 visit with Dr. Sabo are material. As Plaintiff notes, the October 9, 2023 record contains a recommendation from Dr. Ohlinger that Plaintiff meet with Dr. Sabo, an orthopedic surgeon, regarding the possibility of a total hip arthroplasty. (ECF No. 8, PageID #: 180). The October 17, 2023 record, containing notes from Warner's resulting appointment with Dr. Sabo, discusses Claimant's failure "to improve with multiple non-operative modalities," her "increasing difficulty with activities of daily living," and Dr. Sabo's "concern for falls" and notes that Claimant endorsed severe pain and disability. (ECF No. 8, PageID #: 154). Dr. Sabo then writes under "plan" that he discussed a total arthroplasty with Claimant and notes that they encouraged Plaintiff to attend the "pre-operative information seminar at the hospital." (ECF No. 8, PageID #: 154, 156). While Dr. Sabo did not include in this record, in plain words, that he recommended, as Plaintiff asserts, total hip arthroplasty, the record suggests that surgery was recommended, indicated by the fact that Dr. Sabo noted that non-operative modalities failed, that they discussed total hip arthroplasty at length with Plaintiff, and that Dr. Sabo encouraged Warner to attend the pre-operative seminar at the hospital. (ECF No. 8, PageID #: 154, 156). The Court finds this evidence is material. In his determination, the ALJ found the State agency medical consultant's opinion that Plaintiff could complete light exertional work persuasive in part because Plaintiff's treatment for her musculoskeletal impairments had been "conservative," despite some degenerative findings. (ECF No. 8, PageID

#: 49). The evidence that Dr. Ohlinger recommended Warner meet with an orthopedic surgeon, Dr. Sabo, regarding a total hip arthroplasty and that Dr. Sabo recommended the surgery, or at the least did not explain that such measures were not necessary, suggests that medical professionals suggested *non-conservative* treatment for Plaintiff's musculoskeletal impairments. It is reasonably probable that this evidence of suggested non-conservative treatment could change the ALJ's RFC determination, and ultimately his disability determination. For the same reason, the Court finds Plaintiff's December 12, 2023 record, too, is material but finds that only the portion of the record that states that Plaintiff did indeed receive a total right hip arthroplasty in November 2023 is material, as the post operative findings do not relate to the relevant time period before the ALJ.[3]

### iii.    The Record Reflects Good Cause for Warner's Failure to Present the New and Material Evidence During the Prior Administrative Proceeding.

The Commissioner argues that Warner "failed to establish 'good cause' for failing to submit this [additional] evidence earlier." (ECF No. 12 at 16). They argue that the Court should find, regarding the July 2023 through September 2023 records, that Warner failed to establish good cause as to why evidence in existence before the ALJ's decision was not submitted before November 2023 and March 2024.[4] (ECF No. 12 at 16). The Commissioner then argues that Claimant "cannot simply point to the fact that the evidence was not created until after the

---

[3]     The fact that Plaintiff underwent the total hip arthroplasty operation, however, does relate back to the relevant time period, as the operation was recommended and performed to treat Plaintiff's condition that was present during the relevant time. *See* discussion above regarding post-decision evidence relating back to Plaintiff's condition during the time period before the ALJ.

[4]     The Court notes that it disagrees with the Commissioner's assertions regarding the July 2023 through September 2023 evidence. The good cause requirement of 42 U.S.C. § 405(g) states there must be "good cause for the failure to incorporate such evidence into the record in a prior proceeding" but says nothing beyond that about justifying the date on which claimant does submit the records.

administrative hearing but must establish good cause for why she did not cause the evidence to be created and produced until after the administrative proceeding" and argues that she has not made such a showing. (ECF No. 12 at 16).

The Court agrees with the Commissioner that Warner has failed to meet her burden to establish that good cause exists for her failure to incorporate this additional evidence into the record in a prior proceeding. In fact, the Court finds that Warner has not even attempted to make a good cause argument in her brief. But the Northern District of Ohio has recognized that the Court may grant a sentence six remand *sua sponte*. *Gifford v. Comm'r of Soc. Sec.*, No. 5:20-CV-559, 2021 WL 3737912, at *4 (N.D. Ohio Aug. 24, 2021) (citing *Street v. Comm'r of Soc. Sec.*, 390 F. Supp. 2d 630, 640 (E.D. Mich. 2005)). The Court finds that the record shows evidence of good cause for failing to incorporate the September 6, 2023 MRI results, October 9, 2023 and October 17, 2023 clinical notes, and December 12, 2023 evidence of Warner's hip surgery into the record in a prior proceeding. First, there is evidence of an impediment to Warner's ability to procure or cause this evidence to be created prior to the administrative hearing. During the ALJ's hearing, Warner explained that she was completing physical therapy, and despite it not helping her pain much, she was required to complete six months of physical therapy before her insurance would cover an MRI. (ECF No. 8, PageID #: 70–71). The Court finds this is a reasonable justification for failing to obtain an MRI prior to the ALJ's hearing, and the record reflects good cause for failing to present the MRI results during a prior proceeding.

Additionally, good cause exists for Warner's failure to present the October 9, 2023 and October 17, 2023 clinical notes and December 12, 2023 record showing that Warner had a right total hip arthroplasty in a prior proceeding because these appointments took place shortly *after* the ALJ issued his decision, arose out of continued medical treatment of Warner's hip condition,

and were not made for the mere purpose of attempting to prove disability. *See Harvey v. Comm'r Soc. Sec.*, No. 16–3266, 2017 WL 4216585, at *9 (6th Cir. Mar. 6, 2017) (finding that good cause existed for Claimant's failure to present evidence of two surgeries in an earlier proceeding because these surgeries occurred shortly after the ALJ issued his decision and the ALJ knew they were scheduled); *Koulizos v. Sec'y of Health & Hum. Servs.*, No. 85–1654, 1986 WL 17488, at *2 (6th Cir. 1986) (finding that "good cause is shown for remand if the new evidence arises from continued medical treatment of the condition, and was not generated merely for the purpose of attempting to prove disability"); *Freeman v. Comm'r of Soc. Sec.*, No. 1:07-CV-536, 2008 WL 2074019, at *5 (W.D. Mich. May 14, 2008) (finding that Claimant "demonstrated good cause for presenting . . . new evidence, because it [wa]s continued medical treatment of her chronic pelvic pain").

Therefore, despite Plaintiff's failure to argue good cause, the Court finds, *sua sponte*, that the record shows evidence of good cause for Plaintiff's failure to incorporate the September 6, 2023 MRI results, October 9, 2023 and October 17, 2023 clinical notes, and December 12, 2023 evidence of Warner's hip surgery in a prior administrative proceeding.

**VI. Conclusion**

Based on the foregoing, the Court finds that sentence six remand requiring the ALJ to consider the September 6, 2023 MRI results, October 9, 2023 and October 17, 2023 clinical notes, and December 12, 2023 evidence of Warner's right total hip arthroplasty is proper, as the evidence is new and material, and good cause exists for Plaintiff's failure to incorporate it into the record in an earlier proceeding. Thus, the Court REMANDS this matter under sentence six of 42 U.S.C. § 405(g) for further administrative proceedings and consideration of new and material evidence including the September 6, 2023 MRI results, the October 9, 2023 and October

17, 2023 clinical notes, and the portion of the December 12, 2023 clinical notes evidencing Warner's right total hip arthroplasty. The case is administratively closed, subject to reopening upon motion by the parties.

**IT IS SO ORDERED.**

Dated: May 14, 2025

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE